UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

USDC SDNY
DOCUMENT
ELECTRONICALLY FILED
DOC #:
DATE FILED:

| | |
|---|---|
| JAMES WHITTED, | : |
|       Petitioner, | :    07 Civ. 2174 (SCR) (LMS) |
| v. | :    ORDER ADOPTING REPORT AND |
| UNITED STATES OF AMERICA, | :    RECOMMENDATION |
|       Respondent. | : |

**STEPHEN C. ROBINSON, UNITED STATES DISTRICT JUDGE.**

Petitioner James Whitted ("Whitted"), proceeding *pro se*, has filed a petition to vacate, set aside, or correct his sentence pursuant to 28 U.S.C. § 2255 on the ground that he received ineffective assistance of counsel at the time he entered a plea of guilty. That plea, he argues, was not made knowingly, voluntarily, and intelligently. He asserts that his counsel, James Monroe, misinformed him about the true nature and consequences of his guilty plea when he (1) misinformed him that the offense he pleaded guilty to carried a minimum sentence of ten years and a potential maximum of life imprisonment; (2) misled him into believing that the drug amount that he admitted/allocuted to was the amount involved in the entire conspiracy, and not the quantity that would be attributed solely to him; and (3) failed to advise him that his buyer/seller relationship with certain individuals involved in the case did not necessarily constitute his involvement in their conspiracy.

This matter was referred to United States Magistrate Judge Lisa M. Smith, who issued a Report and Recommendation on September 16, 2009, concluding that Whitted's petition should be denied in its entirety. Whitted has filed objections to the Report and Recommendation,

07 Civ. 2174 (SCR) (LMS)

pursuant to 28 U.S.C. § 636(b)(1). *See* Rule 11 of the Rules Governing Section 2254 Cases in the United States District Courts. The Government has not filed a response to these objections.

For the reasons set forth in this Memorandum Order, this Court adopts the Report and Recommendation and accordingly denies the petition in its entirety.

## I. Standard of Review

In reviewing a Report and Recommendation, a district court "may accept, reject, or modify, in whole or in part, the findings or recommendations made by the magistrate judge." 28 U.S.C §636(b)(1)(C). To accept a Report and Recommendation to which no timely objection has been made, a district court need only satisfy itself that "there is no clear error on the face of the record." *Nelson v. Smith*, 618 F. Supp. 1186, 1189 (S.D.N.Y. 1985) (citations omitted). A party may file "*specific* written objections," Fed. R. Civ. P. 72(b), to a Magistrate Judge's proposed findings and recommendations, and, in that case, the district court has an obligation to make a de novo determination as to those portions of the Report and Recommendation to which objections were made. 28 U.S.C. 636(b)(1); *Grassia v. Scull*, 892 F.2d 16, 19 (2d Cir. 1989). The phrase "de novo determination" in section 636(b)(1)—as opposed to "de novo hearing"—was used by Congress "to permit whatever reliance a district judge, in the exercise of sound judicial discretion, chose to place on a magistrate's proposed findings and recommendations." *United States v. Raddatz*, 447 U.S. 667, 676 (1980). A district court may, in its sound discretion, afford a degree of deference to the Magistrate Judge's Report and Recommendation. *Id*. Moreover, "[t]o the extent . . . that the party makes only conclusory or general objections, or simply reiterates the original arguments, the Court will review the Report strictly for clear error." *Harden v. LaClaire*, No. 07 Civ. 4592, 2008 WL 4735231, at *1 (S.D.N.Y. Oct. 27, 2008) (collecting cases).

2

07 Civ. 2174 (SCR) (LMS)

Here, though Whitted writes in his opposition to the Report and Recommendation that "the report and recommendation misses the point that was raised in the petitioner's § 2255 motion which focuses on the events and performances of counsel at the pretrial stages of the case and not the incident afterwards," his objections reiterate the arguments that were before Judge Smith regarding the misinformation that Whitted relied upon in entering a guilty plea. Consequently, this Court will only review the Report and Recommendation before it for clear error.

## III. Discussion

This Court has reviewed Magistrate Judge Smith's Report and Recommendation and has determined that there is no clear legal error on the face of the record. Accordingly, this Court adopts the Report and Recommendation.

Claims of ineffective assistance of counsel are evaluated under the two-part standard adopted in *Strickland v. Washington*, 466 U.S. 668 (1984), requiring the defendant to show that (1) counsel's performance was deficient, meaning that "counsel made errors so serious that counsel was not functioning as the 'counsel' guaranteed the defendant by the Sixth Amendment"; and (2) the deficient performance prejudiced the defense. *Id.* at 687. However, "there is no reason for a court deciding an ineffective assistance claim to approach the inquiry in the same order or even to address both components of the inquiry if the defendant makes an insufficient showing on one. In particular, a court need not determine whether counsel's performance was deficient before examining the prejudice suffered by the defendant as a result of the alleged deficiencies." *Id.* at 697. In *Hill v. Lockhart*, 474 U.S. 52 (1985), the Supreme Court held that "the two-part *Strickland v. Washington* test applies to challenges to guilty pleas based on ineffective assistance of counsel." *Id.* at 58. In order to satisfy the "prejudice"

3

07 Civ. 2174 (SCR) (LMS)

requirement in this context, "the defendant must show that there is a reasonable probability that, but for counsel's errors, he would not have pleaded guilty and would have insisted on going to trial." *Id.* at 59.

Whitted argues that the Report and Recommendation did not dispute the following claims: (1) that petitioner's buyer/seller relationship does not amount to a conspiracy; (2) that the drug amount allocuted to is not sufficient to trigger the statutory minimum sentence of ten years and maximum of life imprisonment; (3) that the drug amount admitted by petitioner applies to the entire alleged conspiracy rather than to him solely; and (4) that the failure to explain the nature of the consequences of his plea of guilty by counsel amounts to ineffective assistance of counsel. Obj. at 2. He argues that "these failures enumerated above, if known would have assisted him in the decision making process to go to trial or resolve the case in a non-trial disposition." *Id.*

Whether, as Whitted argues, the failure of counsel to explain the nature or consequences of a guilty plea generally would amount to ineffective assistance of counsel is not a question that is before this Court. Each of the alleged errors by counsel can be analyzed under the "prejudice" prong of the *Strickland* standard to determine whether these instances of misinformation were determinative in Whitted's decision to plead guilty. Regarding the statutory minimum and maximum that applied to the drug quantity Whitted allocuted to in his plea, Whitted correctly notes that the Government made an initial error. Under the terms of his plea agreement with the Government, Whitted stipulated that the offense involved more than three and a half kilograms and less than five kilograms of cocaine, and the parties also stipulated that the mandatory minimum was 120 months' imprisonment with a Guidelines range of 120-125 months. A8-A9.[1] After the plea hearing, the Government realized that these two provisions were inconsistent,

---

[1] "A" refers to citations to the Appendix to the Government's Memorandum of Law in Opposition.

4

07 Civ. 2174 (SCR) (LMS)

because under *Apprendi v. New Jersey*, 530 U.S. 466 (2000), the ten-year mandatory minimum would apply only if the defense allocuted to a cocaine amount of five kilograms or more. Gov't Mem. in Opp'n at 7. Under the plea as it stood, with Whitted allocating to less than five kilograms, he now faced a five year mandatory minimum and a maximum of forty years with a stipulated Guidelines range of 100 to 125 months, an outcome that would never have resulted but for a serendipitous mistake by the Government. Gov't Mem. in Opp'n at 41; A64. Thus, to the extent that defense counsel advised Whitted that by pleading guilty he would be facing a minimum of ten years and a maximum of life imprisonment, the penalties applicable to the conspiracy count in which Whitted was charged in the Superseding Indictment, Whitted and his defense counsel chanced upon an even better deal than expected.

Nevertheless, Whitted had the opportunity to withdraw his guilty plea with the assistance of his new counsel, Theodore Green. It is not clear, as the Government argues in its opposition, that he could have withdrawn his plea and proceeded to trial as if the guilty plea had not happened. Faced with the prospect of Whitted's motion to withdraw, the Government advised Whitted that not only would the original charge carrying a ten-year mandatory minimum be reinstated, but the Government would also file a prior felony information that would double that mandatory minimum to twenty years and return to the Grand Jury for a superseding indictment adding firearms charges and crack charges. However, at that point, Whitted had accurate information regarding the minimum and maximum penalties that would apply both if he adhered to his plea agreement and if he withdrew his guilty plea and went to trial. Armed with that information, he chose not to withdraw his plea.[2] Accordingly, even if his first counsel

---

[2] The cases Whitted cites in his objections to demonstrate a Rule 11 violation, *United States v. Harrington*, 354 F.3d 178 (2d Cir. 2004) and *United States v. Adams*, 448 F.3d 492 (2d Cir. 2006), are inapposite because these are cases in which the District Court Judge denied the defendant's motion to withdraw his guilty plea. In this case, Mr. Green filed a motion to withdraw Whitted's guilty plea on June 16, 2004, A1–A48, and at a conference before the District

5

07 Civ. 2174 (SCR) (LMS)

misadvised him regarding the potential sentences he faced, he has not demonstrated any resulting prejudice.

In his affidavit, Whitted also states that, before he agreed to enter into the plea agreement, his counsel "assured him" that he would be allowed to challenge the quantity of drugs alleged in the indictment at the sentencing hearing before the judge. Petitioner's Aff. of Facts at ¶ 2. While Whitted may have been misinformed as to the ramifications of challenging the quantity of drugs at sentencing, and appeared to still be confused as to the consequences of this challenge during the *Fatico* hearing where he was represented by Mr. Green,[3] any lingering confusion at that point was too attenuated to be attributed to Whitted's first counsel, Mr. Monroe. In Mr. Green's memorandum of law in support of Whitted's motion to withdraw his guilty plea, Mr. Green discusses Whitted's concern about litigating issues of drug quantity at sentencing and the problematic nature of the advice initially given to him regarding his ability to do that. A45. Thus, it would appear that Whitted's second counsel had explained the scope of Whitted's ability to challenge drug weight before Whitted made the decision to withdraw his motion to withdraw his guilty plea. Even at the conference on April 13, 2005, in which the Court detailed the risks Whitted faced if he went forward with the *Fatico* hearing and gave Whitted the chance to withdraw his motion for a *Fatico* hearing, Whitted chose to continue the hearing. Conf. Tr. dated Apr. 13, 2005, at 9. Thus, as the government argues, Whitted's sentencing exposure was "now being driven in large part by his post-plea conduct: challenging the quantity of drugs for

---

Court on July 15, 2004, the Government informed the Court that it did not oppose the motion to withdraw. A73–A74. The Government and the Court explained the consequences and risks of withdrawing the guilty plea to Whitted and that the only way that he would avoid the ten-year minimum was if he adhered to the plea. A61–A69. The Court then allowed Whitted additional time to consider whether he wanted to go forward with his motion, and on July 27, 2004, Mr. Green advised the Court that Whitted withdrew his motion to withdraw his guilty plea. A76.
[3] After the Court fully explained the implications of both making the motion for the *Fatico* hearing and the risks of going forward with the hearing at the conference on April 13, 2005, Whitted asked whether, in light of the relatively small benefit he stood to gain if he won the *Fatico* hearing and the exponential jump in the Guidelines range if he lost, he could withdraw his *Fatico* motion and still return to his plea agreement. A114–A127.

6

07 Civ. 2174 (SCR) (LMS)

which he was responsible and testifying falsely." Gov't Mem. in Opp'n at 35. Furthermore, Whitted's contention that, relying on the advice of counsel, he believed that the drug amount he allocuted to was the amount involved in the entire conspiracy, not the amount that would be attributed to him, is directly refuted by his allocution. The Court initially allocuted Whitted on whether the amount of cocaine that he was involved in distributing and conspiring to distribute exceeded five kilograms, but then, after a brief sidebar, reallocuted Whitted on an amount of cocaine between 3.5 and 5 kilograms. Plea Tr. 21:7–22:8.

> THE COURT: Mr. Whitted, tell me in your own words what you did to commit this crime?
>
> THE DEFENDANT: I bought and sold cocaine in Dutchess County. I got cocaine from other people and sold it on the streets for more money.
> ...
>
> THE COURT: And during that [February 2002 to May 2003] period of time what quantity of cocaine were you involved in distributing and conspiring to distribute?
>
> THE DEFENDANT: Three or four ounces of cocaine at a time.
>
> THE COURT: And over that entire period of time did that constitute at least five kilograms of cocaine?
>
> THE DEFENDANT: Yes.

*Id.* After the sidebar, the Court rephrased the last question: "During the period of time between February 2002 and May 2003 would it be correct to say that you were engaged in the distribution and conspiracy to distribute a quantity of over three and a half kilograms of cocaine but not more than five kilograms of cocaine?" Whitted responded, "Yes." *Id.* Though the phrasing of the last question varied slightly, the previous questions are clearly asking about Whitted's direct, personal involvement. Furthermore, even if he was confused as to the quantity he was allocating to or misadvised by his first attorney regarding his allocution, he had the opportunity to later withdraw his guilty plea.

7

07 Civ. 2174 (SCR) (LMS)

Whitted quotes this Court's remarks from the May 25, 2005 conference following the *Fatico* hearing to support his argument that defense counsel failed to provide him with sufficient information to guide his decision whether to plead guilty: "I don't think we can state that the government has done a good job of putting, or I can find that the government put in his hands directly enough drugs to meet the five-year mandatory minimum ... The second issue is whether or not he can be fairly said to be a part of Mr. Victoria's drug conspiracy. And I think the answer to that is no." Conf. Tr. dated May 25, 2005, at 7–10. While these remarks may reflect what an outcome at trial might have been, or an issue in contention that prompted Whitted's motion for a *Fatico* hearing, they are not pertinent to the inquiry of whether counsel's alleged errors were determinative in Whitted's decision to plead guilty. Whitted argues that if Mr. Monroe had advised him that he was "actually innocent" of the conspiracy because his relationship with the individuals involved in the case merely constituted a buyer/seller relationship, he would not have pled guilty. However, Mr. Green's submissions in connection with the *Fatico* hearing reflect that he was aware of the buyer/seller distinction and discussed it with his client, though he argued that this relationship limited the drug quantity that could be fairly attributed to Whitted in the context of a larger conspiracy; he did not argue, as indeed he could not argue after Whitted pled guilty to participating in the conspiracy, that the buyer/seller relationship did not amount to a conspiracy at all. *See* Conf. Tr. dated May 25, 2005, at 10–14. Thus, it would appear that Whitted was aware of this argument at the time he decided not to withdraw his guilty plea. Afterwards, at the May 25, 2005 conference, Mr. Green reiterated that Whitted pled guilty to conspiracy, and Mr. Green was then limited to arguing the buyer/seller relationship within those parameters. *See id.*

8

07 Civ. 2174 (SCR) (LMS)

However, even if Whitted did not understand or was not fully aware of this argument at the time he decided not to withdraw his guilty plea, this was no longer a burden that fell on Mr. Monroe; Whitted had the chance to withdraw his guilty plea with his second counsel and chose to forego that opportunity. Thus, he has not demonstrated that, but for Mr. Monroe's errors, he would not have pleaded guilty and would have insisted on going to trial.

## Conclusion

The Court has reviewed Judge Smith's Report and Recommendation and has determined that there is no clear legal error on the face of the record. For the reasons stated in this Memorandum Order, this Court adopts the Report and Recommendation in its entirety and Whitted's petition is denied. This Court finds that Whitted has not "made a substantial showing of the denial of a constitutional right," and therefore does not issue a certificate of appealability. 28 U.S.C. § 2253(c)(2). This Court further certifies pursuant to 28 U.S.C. § 1915(a) that an appeal from this order would not be taken in good faith.

The Clerk of the Court is directed to close this case.

*It is so ordered.*

Dated: December 18, 2009

White Plains, New York

Stephen C. Robinson
United States District Judge